Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York  10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                                        Chapter 11

     MY 2011 GRAND LLC, *et al*,[1]                    Case No.  19-23957 (RDD) (RG)

                                   Jointly Administered

                              Debtors.
--------------------------------------------------------x

## **AMENDED JOINT PLAN OF REORGANIZATION**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: MY 2011 Grand LLC (0415) and S&B Monsey LLC (7070).

58767672;7

## INTRODUCTION

MY 2011 GRAND LLC and S&B MONSEY LLC, (each a "Debtor", and collectively, the "Debtors") submit this joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH DEBTOR AND EACH DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

1.      As used in this Plan, the following terms will have the meanings hereinafter set forth:

2.      "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against a Debtor's Estate under Chapter 123, Title 28, United States Code.

3.      "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

4.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

5.      "Allowed Amount" shall mean the amount of an "Allowed Claim."

58767672;7

6.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of

Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files

an objection or (ii) which is allowed by a Final Order; or (b) which is listed on a Debtor's

schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or

contingent.

7.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an

Allowed Claim.

8.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent

it is an Allowed Claim.

9.      "All Year" shall mean All Year Holdings Limited.

10.     "All Year Claims" shall mean the Proofs of Claim filed by All Year

Holdings Limited On August 21, 2020 on the Court's claim dockets in each of the Debtors' cases

seeking compensatory and punitive damages in concert with others in the sum of $10,000,000

based on tortious interference with contract.

11.     "Assets" shall mean any and all of the respective real or personal property

of any nature of the Debtors, including, without limitation, any real estate, buildings, structures,

improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials,

supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit

accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of

Action and any other general intangibles of the Debtors, of any nature whatsoever, including,

3

without limitation, the property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code.

12.     "Avoidance Actions" shall mean all claims and causes of action which a Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

13.     "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

14.     "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

15.     "Bankruptcy Court" shall mean the Court as defined below.

16.     "Bar Date" shall mean August 24, 2020.

17.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

18.     "Causes of Action" shall mean any and all claims and causes of action of, and remedies granted to, a Debtor against any third party, including, without limitation, any Avoidance Actions or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code and any claims pursuant to any other statutory or common law.

19.     "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

4

20.    "Claimant" shall mean the holder of a Claim.

21.    "Confirmation Date" shall mean the date of the entry of the Confirmation

Order.

22.    "Confirmation Hearing" shall mean the hearing pursuant to the

Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed

confirmation of the Plan.

23.    "Confirmation Order" shall mean the order of the Court confirming the

Plan.

24.    "Court" shall mean the United States Bankruptcy Court for the

SOUTHERN District of New York.

25.    "Creditor" shall mean any entity that holds a Claim against a Debtor.

26.    "Creditors Committee" shall mean a committee of creditors appointed by

the United States Trustee in these cases under section 1102 of the Bankruptcy Code.

27.    "Debtors" shall mean MY 2011 GRAND LLC and S&B MONSEY LLC.

28.    "Disputed Claim" shall mean the whole or any portion of any Claim

against a Debtor to which an objection is timely filed or may be timely filed as to which a Final

Order has not been entered allowing or disallowing such Claim or any portion thereof.

29.    "Disputed Claim Reserve" shall mean Cash to be set aside by the

Disbursing Agent on the Effective Date in an escrow account maintained by the Disbursing

58767672;7

Agent, in an amount equal to the amount that would have been distributed to the holders of Disputed Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other amount as may be approved by the Bankruptcy Court.

30.     "Effective Date" shall mean the date fifteen (15) days after the Confirmation Order is a Final Order, or such other date as may be practicable, provided that absent Bankruptcy Court approval, such date shall be no later than sixty days after the Confirmation Order is a Final Order.

31.     "Estate" shall mean the estate of each Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

32.     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

33.     "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

34.     "Impaired" shall mean not Unimpaired.

35.     "Interest" shall mean an existing ownership interest in a Debtor.

36.     "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

37.     "Goldman" shall mean Yoel Goldman.

6

38.    "Goldman Claims" shall mean the Proofs of Claim filed by Yoel Goldman on August 21, 2020 against each of the Debtors.  The Goldman Claims seek the sum of $10,000,000 in compensatory and punitive damages arising in connection with a series of actions taken by the Debtors, in concert with others, constituting breaches of contract, breaches of fiduciary duties, and breaches of implied covenants of good faith and fair dealing.

39.    "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

40.    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

41.    "Membership Interests" shall mean the Debtors' membership interests in Grand Living LLC II.

42.    "Mezz Lender" shall mean 227 Grand Mezz Lender LLC.

43.    "Mezz Loan" shall mean that certain joint and several loans made to Debtors by the Mezz Lender secured by their respective Membership Interests.

44.    "Monsey" shall mean S&B Monsey LLC.

45.    "MY 2011" shall mean MY 2011 Grand LLC.

46.    "Petition Date" shall mean November 6, 2019.

47.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

7

48.    "Property" shall mean the real property at 227 Grand Street, Brooklyn, New York 11211 owned by Grand Living LLC.

49.    "Property Mortgage' shall mean the $16,350,000 mortgage on the Property.

50.    "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

51.    "Priority Claims" shall mean Claims under Sections 507(a)(3),(4),(5),(6), (7) and (8) of the Bankruptcy Code.

52.     "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

53.    "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (60) days after the Effective Date.

54.    "Reorganized Debtors" shall mean the Debtors on and after the Effective Date.

55.    "Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

8

56.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

57.    "Unclassified Priority Claims" shall mean tax Claims under Sections 507(a)(8) of the Bankruptcy Code.

58.    "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

59.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against a Debtor or a Debtor's Estate; or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative of priority claims.

60.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

61.    On the Effective Date, the Debtors' cases will be deemed substantively consolidated in accordance with the terms of the Plan. As a result, the classes of Claims and Interest are classes that pertain to each of the Debtors.

## MY 2011 Class 1

58.    **Classification** – 227 Grand Mezz Lender LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  As of July 15, 2021, the

9

227 Grand Mezz Lender LLC asserts that $13,632,948.93 is due from MY 2011 and Monsey, jointly and severally.  This amount includes substantial default rate interest at 24% per annum which will be the subject of an objection.  Additionally, subject to Plan Confirmation, the Claim may be reduced by up to 20.8% by agreement of a 20.8% participant in the Mezz Lender.

59.    **Treatment**  The Debtors shall satisfy the Class I Claim with a new note and security interest or from the proceeds of a refinancing to be finalized on or prior to the Effective Date.  The new note and mortgage shall be on customary terms and forms providing for 8% interest (4.00% to be paid currently and 4.00% to accrue) with the principal balance and accrued interest to be paid at maturity on the 20 month anniversary of the Effective Date.  If the Debtors refinance the Class 1 Claim on or before the Effective Date, the Class 1 Claimant shall be paid the Allowed Amount due at that time plus interest through the date of payment.

60.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### MY 2011 Class 2

61.    **Classification** –  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  The Debtors estimate no Class 2 Claims.

62.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

63.    **Voting --** Unimpaired and deemed to have accepted the Plan.

10

### MY 2011 Class 3

64.    **Classification** – General Unsecured Claims.    Filed and scheduled General Unsecured Claims total $20,038,050,00 in MY2011, including $20 million in the aggregate comprised of the Goldman and All Year Claims.

65.    **Treatment** – Each Class 3 Claimant shall be paid the Allowed Amount of its Claim plus interest at the Legal Rate on the 20-month anniversary of the Effective Date.  If the Debtors refinance the Class 1 Claim on or before the Effective Date, each Class 3 Claimant shall be paid the Allowed Amount due on or before the Effective Date, plus interest at the Legal Rate through the date of payment.

66.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### MY 2011 Class 4

67.    **Classification** – Interests Holders.

68.    **Treatment** – Interest Holders shall be obligated to pay or escrow for Administrative Claims and statutory fees due to the Office of the United States Trustee on or before the Effective Date.  Interest Holders shall be entitled maintain ownership of their Interests under the Plan.

69.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Monsey Class 1

70.    **Classification** – 227 Grand Mezz Lender LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  As of July 15, 2021, the

11

58767672;7

227 Grand Mezz Lender LLC asserts that $13,632,948.93 is due from MY 2011 and Monsey,

jointly and severally.  This amount includes substantial default rate interest at 24% per annum

which will be the subject of an objection.  Additionally, subject to Plan Confirmation, the Claim

may be reduced by up to 20.8% by agreement of a 20.8% participant in the Mezz Lender.

71.    **Treatment**  The Debtors shall satisfy the Class I Claim with a new note

and security interest or from the proceeds of a refinancing to be finalized on or prior to the

Effective Date.  The new note and mortgage shall be on customary terms and forms providing

for 8% interest (4.00% to be paid currently and 4.00% to accrue) with the principal balance and

accrued interest to be paid at maturity on the 20 month anniversary of the Effective Date.  If the

Debtors refinance the Class 1 Claim on or before the Effective Date, the Class 1 Claimant shall

be paid the Allowed Amount due at that time plus interest through the date of payment.

72.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Monsey Class 2**

73.    **Classification** –  Priority Claims under Sections

507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  The Debtors estimate no Class 2

Claims.

74.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective

Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the

date of payment.

75.    **Voting --** Unimpaired and deemed to have accepted the Plan.

12

**Monsey Class 3**

76.    **Classification** – General Unsecured Claims.  Filed and scheduled General Unsecured Claims total $20,172,675.00 in Monsey, including $20 million in the aggregate comprised of the Goldman and All Year Claims.

77.    **Treatment** – Each Class 3 Claimant shall be paid the Allowed Amount of its Claim plus interest at the Legal Rate on the 20-month anniversary of the Effective Date.  If the Debtors refinance the Class 1 Claim on or before the Effective Date, each Class 3 Claimant shall be paid the Allowed Amount due on or before the Effective Date, plus interest at the Legal Rate through the date of payment.

78.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Monsey Class 4**

79.    **Classification** – Interests Holders.

80.    **Treatment** – Interest Holders shall be obligated to pay or escrow for Administrative Claims and statutory fees due to the Office of the United States Trustee on or before the Effective Date.  Interest Holders shall be entitled maintain ownership of their Interests under the Plan.

81.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

13

58767672;7

## UNCLASSIFIED PRIORITY TAX CLAIMS

82.     Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. Filed and Scheduled Claims total approximately 0.  The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

83.     Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

84.     Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims

14

and Administrative Claims incurred in the ordinary course of the Debtors' business) must be filed and served on counsel for the Debtors and the party requesting payment of an Administrative Claim within thirty (30) days of the date such request for payment has been filed.

85.     Unless otherwise ordered by the Bankruptcy Court, and subject to notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date").  The Debtors estimate legal fees of approximately $200,000 through the Confirmation Date, inclusive of any interim fees that may be awarded before that date.

## STATUTORY FEES

86.     The Debtors shall pay from Cash in the Estate all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION

87.     Confirmation of the Plan is contingent upon the following conditions being satisfied:

58767672;7

(i)      consensual resolution, or adjudication by this Court, of the amount of Goldman's merger consideration in an amount not greater than $2.6 million.

(ii)      Expungement of, or subordination below, the class of General Unsecured Claims of the Goldman and All Year Claims.

(iii)      Binding commitment of a financial institution or other bona fide capital providers of an amount sufficient to fund Plan payments and refinancing of secured debt of Grand Living II and Grand Living.

(iv)   the Confirmation Order being in form and substance acceptable to the Debtors, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

88.    The effectiveness of the Plan is contingent on the following conditions being satisfied:

(i)  The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors; and

(ii)   No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this paragraph are satisfied, or, if permitted, waived.

16

58767672;7

(iii)   The Debtors may waive any or all of the conditions set forth in

paragraphs 87 and 88 of this Plan.

89.   **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date

all assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all

Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not

been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as

otherwise provided herein, as of the Effective Date, all property of the Reorganized Debtor shall

be free and clear of all Claims and Interests of Creditors, except for the obligations that are

imposed under the Plan or by a Final Order of the Bankruptcy Court.

90.   **Execution of Documents** -- The Debtor shall be authorized to execute, in

the name of any necessary party, any notice of satisfaction, release or discharge of any Lien,

Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all

federal, state and local governmental agencies or departments for filing and recordation.

91.   **Recording Documents** -- Each and every federal, state and local

governmental agency or department shall be authorized to accept and record any and all

documents and instruments necessary, useful or appropriate to effectuate, implement and

consummate the transaction contemplated by the Plan, including, but not limited to any and all

notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly

preserved by the Plan, and the Confirmation Order.

58767672;7

92.    **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized Debtors' estate, provided, however, that the Reorganized Debtors shall have sole authority for prosecuting any such claims.

93.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

94.    **Claims Resolution and Litigation**.  Pursuant to the Adversary Proceeding, the Court, or the parties by settlement, may resolve the amount of Goldman's merger consideration as a condition to the confirmation of the Plan.  Additionally, the Court shall rule

58767672;7

upon the Debtors' objection to the Goldman and All Year's claims.  It is a condition to confirmation of the Plan that the Goldman and All Year's claims be expunged and/or subordinated.

95.    **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

## MANAGEMENT OF THE DEBTORS

96.    Each Debtor is currently managed by David Goldwasser.  Post-confirmation management shall be performed by Michael Lichtenstein and Toby Moskovits.

97.    Neither the Debtors nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the Debtors and each of their employees, advisors, attorneys, accountants, financial consultants, contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its

19

58767672;7

duties and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative thereof, shall have or pursue any claim or cause of action against the Debtors for making payments in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

## **DISTRIBUTIONS TO CREDITORS**

98.     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

58767672;7

## EXECUTORY CONTRACTS

99.    All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

100.    Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to each Debtor's Bankruptcy Case including, but not limited to, proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtors to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and Causes of Action which may exist on behalf of the Debtors or a Debtor's Estate, including, but not limited to, any right of a Debtor or a Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

21

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtors.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

101.   **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

102.   **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

103.   **Other Actions**.  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

104.   **Modification of Plan**.  The Debtors may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy

58767672;7

any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order,

in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

105.     **Injunction**.  The confirmation of this Plan shall constitute an injunction of

the Court against the commencement or continuation of any action, the employment of process,

or any act, to collect, recover or offset from the Debtors or their property or properties, any

obligation or debt except pursuant to the terms of the Plan.

106.     **Discharge.**  On the Effective Date, except as otherwise expressly provided

in this Plan or the Confirmation Order, the Plan shall:  (i) discharge each Debtor and any of its

Assets from all Claims, demands, liabilities and other debts that arose on or before the Effective

Date, including, without limitation, all debts of the kind specified in section 502 of the

Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed

filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed

pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been

disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based on such debt

has accepted this Plan; and (ii) preclude all entities from asserting against each Debtor or any of

its Assets any other or further Claims based upon any act or omission, transaction or other

activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections

524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any

judgment obtained against each Debtor at any time, to the extent that such judgment relates to a

discharged Claim. The Debtor shall be discharged from any Claims and agreements related to

58767672;7

debts that arose on or before the Effective Date and such debts, Claims and agreements are

deemed restructured and new as set forth in the Plan.

## <u>CLOSING THE CASE</u>

62.    Upon substantial consummation, the Debtors may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
       July 9, 2021

**MY 2011 GRAND LLC and
S&B MONSEY LLC**

By:    <u>s/ David Goldwasser  </u>

**BACKENROTH FRANKEL & KRINSKY, LLP**
Attorneys for Debtors


By:    <u>s/Mark A. Frankel</u>
       800 Third Avenue
       New York, New York 10022
       (212) 593-1100

58767672;7