Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York 10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                      Chapter 11

     MY 2011 GRAND LLC[1]                          Case no. 19-23957 (RDD)
                                  Jointly Administered

                      Debtors.
--------------------------------------------------------x

## ~~SECOND~~THIRD AMENDED JOINT DISCLOSURE STATEMENT

       THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.

       THIS AMENDED DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF MY 2011 GRAND LLC AND S&B MONSEY LLC, (EACH A DEBTOR, AND COLLECTIVELY, THE "DEBTORS").

       THIS AMENDED DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE AMENDED PLAN OF REORGANIZATION, A COPY OF WHICH IS ANNEXED HERETO AS EXHIBIT A.

       ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE AMENDED PLAN OF REORGANIZATION.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: MY 2011 Grand LLC (0415) and S&B Monsey LLC (7070)

~~60538680;1~~

## INTRODUCTION

1.      MY 2011 GRAND LLC ("MY 2011") and S&B MONSEY LLC,

("Monsey") (each a "Debtor," and collectively, the "Debtors") submit this joint amended

disclosure statement ("Disclosure Statement") in connection with their joint amended plan of

reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the

Plan is attached hereto as Exhibit A.  All Creditors are urged to review the Plan, in addition to

reviewing this Disclosure Statement.  All capitalized terms used but not defined shall have the

meaning set forth in the Plan.

2.      This Disclosure Statement is not intended to replace a review and analysis

of the Plan.  Rather, it is submitted as a review of the Plan in an effort to explain the Plan.  To the

extent a Creditor has questions, the Debtors urge you to contact Debtors' counsel, Mark Frankel,

Esq., at 212.593.1100 or mfrankel@bfklaw.com and every effort will be made to assist you.

3.      On _____, ~~2021~~2022, after notice and a hearing, the

Bankruptcy Court entered an order approving this Disclosure Statement as containing information

of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history

of the Debtors and the condition of the Debtors' books and records, to enable Creditors whose

votes are being solicited to make an informed judgment whether to accept or reject the Plan.

4.      EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO

REPRESENTATIONS CONCERNING THE DEBTORS, THEIR ASSETS, THEIR PAST OR

FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH

REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH

RESPECT TO THE PLAN.

60538680;1

5.      THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTORS.  THE DEBTORS' BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTORS' FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTORS' COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTORS NOR DEBTORS' COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

6.      After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtors to be received by _____, ~~2021~~2022.

7.      The Bankruptcy Court has entered an Order fixing _____, ~~2021~~2022, at _____ a.m., at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008, as the date, time and place for the Zoom.Gov hearing on confirmation of the Plan and fixing _____, ~~2021~~2022, as the last date for the filing and serving of any objections to confirmation of the Plan.  A copy of any objection to confirmation of the Plan must be filed with the Court, served on Debtors' counsel and delivered to Judge Robert D. Drain's chambers at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008 on or before such date.

60538680;1

## **BACKGROUND**

8.      On November 6, 2019, each Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

9.      My2011 owns a 31.75% membership interest in Grand Living LLC II. Monsey owns a 33% membership interest in Grand Living LLC II. Yoel Goldman ("Goldman"), a non-debtor, through his entity All Year Holdings Limited ("All Year"), holds the remaining 35.25% membership interest in Grand Living LLC II. Grand Living LLC II is the sole member of Grand Living LLC ("Grand Living"). Grand Living owns the real property at 227 Grand Street, Brooklyn, New York 11211 ("Property"), pictured below:

3



10.    227 Grand Mezz Lender LLC ("Mezz Lender") asserts a joint and several claim in the amount of $~~13,632,948.93~~14,509,388.93 as of ~~July 15~~December 23, 2021 against the Debtors secured by their respective membership interests (the "Membership Interests") in Grand Living LLC II ("Mezz Loan").  The Debtors vigorously dispute the Mezz Lender's claim.  The principal amount of the loan was in the amount of $7.2 million.  $1.5 million (or 20.8%) of the mezz loan was advanced by a family member of the one of the Debtors' principals.  By agreement between the Debtors and the Estate of Abraham Schwarzman, a copy of which is annexed to the Plan as Exhibit A, subject to Plan Confirmation, the Estate has agreed to subordinate to the other Mezz Lender participants, and waive payment of its 20.8% interest.  Accordingly, even allowing

4

60538680;1

for the accrual of 24% default rate interest on the 79.2% residual amount of the mezzanine loan, the maximum indebtedness due to the Mezz Lender is approximately $~~9.5 million~~11,578,492.30, by Mezz Lender's calculation, as of December 23, 2021.

11.     Based on a February 18, 2021 appraisal, the Debtors estimate that the value of the Property is $42 million.  The Property mortgage is currently approximately $~~17 million~~18,325,000 ("Property Mortgage").  The net equity in the Property is $~~25,000,000~~approximately $23,675,000.  MY2011's 31.75% share of the net equity has a $~~9,477,375~~7,516,812 value.  Monsey's 33% share has a $~~9,850,500~~7,812,750 value for a total value of **$~~16,187,500~~15,329,562.**

12.     The Mezz Loans came due, but the Debtors could not agree with Mr. Goldman, who controlled All Year's 35.25% membership interest, on refinancing or on a buy-out. The Debtors nonetheless found hard money financing, but the deal needed a few days more to close.  The Mezz Lender had scheduled a UCC sale of the Debtors' interests and was unwilling to adjourn the sale to enable the Debtors to obtain new financing.

13.     The Debtors, therefore, filed these cases to buy time to obtain such financing.  Initially in these cases, the Debtors moved to dismiss and close on the deal essentially as contemplated before the case was filed.  The Debtors, however, did not proceed because the Mezz Lender and or Debtors' partners in the deal made last minute demands that soured the deal. The Debtors do not own 100% of the interests.  It has been hard to get all of the members and the Mezz Lender in agreement, together with financing, at the same time.  The Mezz Lender has been particularly obstructive.  It broadcasted to the market that its goal is to take over ownership of the building.  This chilled efforts to refinance.

5

14.     The original plan to exit bankruptcy was to refinance the Mezz Loan.  For some time, the Debtors had a lender committed with a term sheet to refinance Mezz Loan.  Part of the delay in effectuating that refinance was that the loan is contingent upon a corresponding refinancing or extension of the Property Mortgage which matured by its terms.

15.     The Property Mortgage lender was ready to extend the loan and send extension documents that would have extended the loan and enabled an exit from bankruptcy but due to the unreasonable refusal of Goldman to provide the information that the Property Mortgage Lender needed for the extension, the Property Mortgage loan went into default.  Due to COVID-19 and lack of cooperation by Goldman who refused to provide financial information and sign an extension of his personal guaranty, the refinancing lenders became uncomfortable and refused to refinance the Mezz Loan or the Property Mortgage.  As a result of the breakdown in financing, the Debtors advised the Court that it could not move forward with confirmation of the original plan.

16.     In light of the acrimony between the partners, including pre-petition litigation and the obstructive conduct of Goldman, it has become became clear to the Debtors, as the majority in interest equity holders of Grand Living, that there will would be no ability to reorganize and emerge from the bankruptcy if Goldman, through All Year Holdings Ltd. ("AYHL"), remains remained an equity owner of Grand Living.  Accordingly, on September 22, 2020, the Majority in Interest implemented a freeze-out merger (the "Merger"), as is their right under New York law and invoking the broad dispute resolution of this Court. Conducting the Merger is was the only way to save the Debtors, Grand Living, their creditors and the Property from financial ruin, not only because of Goldman's most recent intentional misconduct with

6

respect to the Loan extension, but also based on his past misconduct in looting money and obstructing the operation of the business.

17.    Under New York law, the freezeout merger process permits majority holders in an entity to cash out a minority shareholder. The minority shareholder's recourse is to challenge the proposed merger consideration in a judicial valuation proceeding.

18.    On October 14, 2020, Goldman and AYHL filed a motion objecting to the use of the Debtors' equity interests to effect the Merger without Bankruptcy Court approval under Section 363 of the Bankruptcy Code and for relief from the automatic stay to continue with the Pre-Petition Litigation (the "363/Stay Relief Motion") [ECF No. 67].

19.    On October 2, 2020, well after the commencement of the Bankruptcy Cases, Goldman and AYHL commenced an action in the Supreme Court of the State of New York, Kings County, against certain non-debtors, captioned *Yoel Goldman and All Year Holdings Limited v. Grand Living II, LLC, GL Merger Partner, LLC, Yechiel Michael Lichtenstein and Moshe Doc Schweid*, Index No. 518781/2020 (the "2020 Action"). Plaintiffs in the 2020 Action seek declaratory relief that the merger lacked authorization and is null and void *ab initio*, and damages of not less than $15 million. In apparent recognition that the 2020 Action violates the automatic stay and requires the Debtors as parties, Claimants sought relief from the automatic stay to add the Debtors as defendants in the 2020 Action.

20.    On November 30, 2020, the Debtors filed a Response in Opposition to the 363/Stay Relief Motion (the "Response to 363/Stay Relief Motion") [ECF No. 74].

60538680;1

21.    On December 7, 2020, the Court denied the 363/Stay Relief Motion. Thereafter, on January 11, 2021, the Debtors filed an adversary proceeding against Claimants, seeking (i) declaratory relief that that the freezeout merger is authorized and appropriate, and (ii) a determination by this Court as to the appropriate monetary consideration for the merger (the "Adversary Proceeding").

22.    Then, on February 9, 2021, despite the commencement of the Adversary Proceeding seeking identical relief in this Court, the Claimants commenced yet another action in the Supreme Court of the State of New York, County of Kings, against the Company, captioned *Yoel Goldman and All Year Holdings Limited vs. Grand Living II, LLC*, Index No. 503207/2021 (the "2021 Action"). Plaintiffs in the 2021 Action request the state court appraise and determine the fair value of their membership interests in the Company. Similar to the 2020 Action, the 2021 Action requires joining the Debtors as indispensable parties, and commensurately requires relief from the automatic stay to proceed. On February 11, 2021, the Debtors amended the complaint in the Adversary Proceeding to add certain parties as plaintiffs.

23.    On February 25, 2021, Grand Living filed a Notice of Removal of the 2021 Action to the United States District Court for the Eastern District of New York, with the goal of having such action ultimately transferred to this Court. Goldman and ~~AYHLhave~~AYHL filed a motion to remand the 2021 Action to the New York State Supreme Court, Kings County.

24.    In the meantime, Goldman lost control of AYHL to its creditors. The Debtors, therefore, commenced settlement negotiations with the responsible restructuring officers, which resulted in a settlement agreement approved by the Bankruptcy Court on October 20, 2021.

8

60538680;1

25.     The settlement agreement was entered into among the Debtors', certain Debtor affiliates and Debtor principals, and AYHL.  Under the settlement agreement, Grand Living agrees to pay four million seven hundred thousand dollars ($4,700,000.00) (the "Payment") to AYHL under the Plan, assuming confirmation and effectiveness of the Plan.  Upon receipt of the Payment, AYHL's membership interests in Grand Living II will be deemed surrendered or cancelled

26.     If AYHL has not received the Payment within certain parameters, or if the Plan is not confirmed, then AYHL shall be entitled to file a junior mortgage, and cause the sale of the Property by a third-party arms-length broker in a manner designed to maximize its value.

27.     The parties agreed to execute stipulations of discontinuance/dismissal with prejudice for the pending litigation with such stipulations to be held in escrow pending Payment of the amounts under the settlement, and to exchange limited mutual releases of each other.

28.     The Court entered an order approving the settlement with AYHL on October 25, 2021.

29.     Goldman and All Year Management ("AYM"), another entity owned and controlled by Goldman,  filed two (2) separate proofs of claim against each of the Debtors arising from the termination of AYM's management contract for the Property (the "Goldman Claims"). The Goldman-AYM Claims are not controlled by AYHL and despite the parties' efforts, they were unable to reach a settlement in principle with to include the Goldman and AYM claims in the settlement with AYHL.  The Goldman Claims seeksought $10,000,000 in compensatory and punitive damages, alleging breaches of contract, breaches of fiduciary duties, and breaches of

9

60538680;1

implied covenants of good faith and fair dealing.  The AYM claims ~~seek~~sought $10,000,00 in

compensatory and punitive damages against each of the Debtors for breach of contract  and

breaches of implied covenants of good faith and fair dealing.    On June 11, 2021, the Debtors filed

an objection to the Goldman and AYM Claims pursuant to which the Debtors seek to have the

Claims expunged.  On November 23, 2021, the Bankruptcy Court entered an order expunging the

Goldman Claims.

> 30.    The ~~Debtors will seek such resolution promptly so that it does not delay
Plan confirmation~~last remaining Claim that must be resolved to enable the Debtors to confirm the
Plan is asserted by 215 Moore Mezzanine Lender LLC ("Moore Mezz Lender") which filed a
claim in the amount of $17,848,567.56 (the "215 Moore Claim"), seeking payment from Monsey
under a mezzanine loan allegedly made jointly and severally to Monsey and Moore Development
LLC on November 18, 2016 (the "Moore Mezzanine Loan").  Moore Mezz Lender now seeks
$26,337,212.43.

> ~~30.    Each of the Goldman and AYM Claim asserts, in conclusory fashion and
without any documentary proof or evidentiary basis, that each Debtor is liable for not less than
$10,000,000 in purported damages.  The Debtors assert that the Claims are unsupported, vague,
and conclusory, and do not and cannot demonstrate actual damages.  Although Goldman and
AYM attempt to portray the actions of the majority holders as unauthorized and tortious, the
Debtors assert that the opposite is true—that Goldman and AYM engaged in a pattern of
self-dealing and breaches of fiduciary duty, and Goldman was properly removed as Manager of the
Company and AYM was properly and lawfully removed as manager of the Property.  Even if
allowed, the Claims are subject to equitable subordination under section 510(c) based on the~~

Claimants' grossly inequitable pre- and post-petition conduct, and subject to mandatory subordination under section 510(b) based upon their relationship to the sale of limited liability company interests to Goldman.

31.      The Debtors filed an objection seeking to disallow the 215 Moore Claim based on fraudulent conveyance grounds asserting that none of the loan proceeds were paid to Monsey or benefited any of Monsey's assets.  Rather, the Loan was for property owned by 215 Moore Development LLC.  Monsey asserts that for tax reasons, it held a nominal 3% tenant in common interest in the 215 Moore Development LLC real property.  Thus, Monsey asserts, it was a nominal signatory on the Moore Mezzanine Loan, obligated so Moore Mezzanine Lender could collect on 100% of the interests in the event of a foreclosure, inclusive of the 3% tenant in common interest nominally held by Monsey.  And when the tax structure became immaterial, Monsey transferred its tenant in common interest to Moore Development on June 6, 2018.

32.      The Debtors assert further, that since the 215 Moore Claimant has recourse against Moore Development, where it is over-secured by $20-30 million, it should first be required to collect against Moore Development, which is owned and controlled by the principals of the Debtors.

33.      Based on the foregoing, the Debtors have sought a ruling from the Court that if the 215 Moore Claim cannot be expunged before the Plan is confirmed, it should be estimated at zero ($0) for voting and distribution purposes.

34.      Moore Mezzanine Lender nonetheless claims that Monsey was meant to be a signatory and that its exposure was not limited to its 3% interest in Moore.  Moore Mezzanine

60538680;1

Lender asserts further that Monsey's transfer of the 3% interest in Moore was a fraudulent conveyance that may be recovered for the benefit of creditors.

35.    Plan feasibility is contingent upon the disallowance of substantially all of the 215 Moore Claim.

36.    31. The For exit financing, the Debtors and their affiliates have spoken with spoke to numerous lenders to provide a mortgage on the Property in the amount of up to $33 million and a new mezzanine loan which will enable the Plan to be confirmed. SKW Funding LLC ("SKW") presented the best term sheet for mortgage financing the amount of $32,600,000 and. SME Funding ("SME") presented an acceptable term sheet for a new mezzanine loan, annexed in a maximum amount of $5,000,000, or maximum debt exposure up to $37,000,000.  Annexed to the Plan as Exhibit B are the SKW and SME term sheets.

37.    32. Projected sources and uses are annexed to the Disclosure Statement as Exhibit B.  Post and post-confirmation projections are annexed to the Disclosure Statement as Exhibit B.

33.    As  During this case, there has always been no cash flow to the reality in these cases, the gating items for confirmation of a Plan has been the resolution, by agreement or Court adjudication, of the freezeout merger consideration due to All Year and the amount, if any, of the Goldman Claims.  This resolution or adjudication is now clearly within reach as the parties are engaging in negotiations and the litigation is teed up for resolution.    Debtors because the mortgage on the Property has been in default and Grand Living has been paying default interest.

12

Post-Confirmation, the Debtors project cash flow that will available to service post confirmation obligations.

34.    Recognizing that these cases must move forward, the Debtors are filing this Amended Chapter 11 plan and disclosure statement to enable the Debtor to emerge from bankruptcy.

60538680;1

## DEBTORS' PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### MY 2011 Class 1

38. 35. **Classification** – 227 Grand Mezz Lender LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  As of July 15December 23, 2021, the 227 Grand Mezz Lender LLC asserts that $13,632,948.9314,509,388.93 is due from MY 2011 and Monsey, jointly and severally.  This amount includes substantial default rate interest at 24% per annum, together with late fees and large legal fees, all of which will be the subject of an objection.  Pursuant to the agreement with the estate of Abraham Schwarzman a copy of which is annexed to the Plan as Exhibit A, 20.8% of the Claim has been waived for Plan purposes.

39. 36. **Treatment**  On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 1 Claim plus interest through the date of payment, subject to the Debtors' agreement with the estate of Abraham Schwarzman to waive payment of 20.8% of the Class 1 Claim.

40. 37. **Voting** – The Debtors assert that Class 1 is Unimpaired and deemed to have accepted the Plan.  The Class 1 Claimant asserts that it is Impaired and entitled to vote to accept or reject the Plan.  Subject to a reservation of the Debtors' rights to assert at that the Confirmation Hearing that the Class I claimant is Unimpaired, the Class 1 Claim is provisionally Allowed in the amount of $1.00 for voting purposes and the Class 1 Claimant is entitled to vote to accept or reject the Plan.

60538680;1

**MY 2011 Class 2**

41.    ~~38.~~ **Classification** –  Priority Claims under Sections

507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  The Debtors estimate no Class 2

Claims.

42.    ~~39.~~ **Treatment** – Payment in full in Cash of Allowed Amount on the

Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date

through the date of payment.

43.    ~~40.~~ **Voting** ~~-~~- Unimpaired and deemed to have accepted the Plan.

**MY 2011 Class 3**

44.    ~~41.~~ **Classification** – General Unsecured Claims.    ~~Filed and scheduled~~

~~Claims total~~Allowed General ~~unsecured claims total $20,038,000.00, including the $20 million~~

~~Goldman Claims.  The Debtors estimate that the Goldman Claims will be disallowed and that the~~

~~Allowed Amount of the Class 3 Claims will be~~Unsecured Claims are projected to total $38,000.

45.    ~~42.~~ **Treatment** – Each Class 3 Claimant shall be paid the Allowed Amount

of its Claim plus interest at the Legal Rate on the 20-month anniversary of the Effective Date.

46.    ~~43.~~ **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**MY 2011 Class 4**

47.    ~~44.~~ **Classification** – Interests Holders.

48.    ~~45.~~ **Treatment** – To the extent necessary, Interest Holders shall be

obligated to pay or escrow for Administrative Claims and statutory fees due to the Office of the

15

United States Trustee on or before the Effective Date.  Interest Holders shall be entitled maintain ownership of their Interests under the Plan.

49.    46. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Monsey Class 1**

50.    47. **Classification** – 227 Grand Mezz Lender LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  As of July 15 December 23, 2021, the 227 Grand Mezz Lender LLC asserts that $13,632,948.93 14,509,388.93 is due from MY 2011 and Monsey, jointly and severally.  This amount includes substantial default rate interest at 24% per annum, together with late fees and large legal fees, all of which will be the subject of an objection.  Pursuant to the agreement with the estate of Abraham Schwarzman a copy of which is annexed to the Plan as Exhibit A, 20.8% of the Claim has been waived for Plan purposes.

51.    **Treatment** On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 1 Claim plus interest through the date of payment, subject to the Debtors' agreement with the estate of Abraham Schwarzman to waive payment of 20.8% of the Class 1 Claim.

52.    **Voting** – The Debtors assert that Class 1 is Unimpaired and deemed to have accepted the Plan.  The Class 1 Claimant asserts that it is Impaired and entitled to vote to accept or reject the Plan.  Subject to a reservation of the Debtors' rights to assert at that the Confirmation Hearing that the Class I claimant is Unimpaired, the Class 1 Claim is provisionally Allowed in the amount of $1.00 for voting purposes and the Class 1 Claimant is entitled to vote to accept or reject the Plan.

16

48.   **Treatment**  On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 1 Claim plus interest through the date of payment, subject to the Debtors' agreement with the estate of Abraham Schwarzman to waive payment of 20.8% of the Class 1 Claim.

49.   **Voting**   Unimpaired and deemed to have accepted the Plan

**Monsey Class 2**

53.   50. **Classification** – 215 Moore Street Mezzanine Lender LLC asserts a note claim and subordinate security interest in the MonseyMoore Membership Interests previously owned by Monsey.  As of November 6December 23, 20192021, the Claimant asserts that $17,848,57726,337,212.43 is due from Monsey.

54.   51. **Treatment** -- On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 12 Claim plus interest through the date of payment.  The Debtors dispute the Claim and if the Claim is Allowed, the Plan may not be feasible.

55.   52. **Voting** – Unimpaired and deemed to have accepted the Plan

**Monsey Class 3**

56.   53. **Classification** –  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  The Debtors estimate no Class 2 Claims.

17

60538680;1

57.    54. **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

58.    55. **Voting --** Unimpaired and deemed to have accepted the Plan.

### Monsey Class 4

59.    56. **Classification** – General Unsecured Claims. Filed and scheduled Claims total General unsecured claims total $20,172,705 in Monsey, including the $20 million Goldman Claims. $17,848,567 of this amount represents a claim filed by 215 Moore Street Mezzanine Lender, which claim, the Debtors believe, will be withdrawn, expunged or estimated at no amount being due before the Confirmation hearing. The Debtors estimate that the Goldman Claims will be disallowed and that the Allowed Amount of the Class 3 General Unsecured Claims will be are projected to total $172,675.

60.    57. **Treatment** – Each Class 3 Claimant shall be paid the Allowed Amount of its Claim plus interest at the Legal Rate on the 20-month anniversary of the Effective Date.

61.    58. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Monsey Class 5

62.    59. **Classification** – Interests Holders.

63.    60. **Treatment** – To the extent necessary, Interest Holders shall be obligated to pay or escrow for Administrative Claims and statutory fees due to the Office of the United States Trustee on or before the Effective Date. Interest Holders shall be entitled maintain ownership of their Interests under the Plan.

18

60538680;1

64.    61. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

65.    62. Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. Filed and Scheduled Claims total approximately 0.  The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

66.    63. Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

67.    64. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims

60538680;1

and Administrative Claims incurred in the ordinary course of the Debtors' business) must be filed

and served on counsel for the Debtors and the party requesting payment of an Administrative

Claim within thirty (30) days of the date such request for payment has been filed.

68.    65. Unless otherwise ordered by the Bankruptcy Court, and subject to

notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of

Professional Fee Claims incurred through the Confirmation Date must be filed and served no later

than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date").  The

Debtors estimate legal fees of approximately $200,000250,000 through the Confirmation Date,

inclusive of any interim fees that may be awarded before that date.

69.    Administrative Claims will be larger in a Chapter 7 case than under the Plan

because there will be additional expenses for Chapter 7 trustee commissions estimated at 2% of

assets, Chapter 7 legal fees estimated at 3% of assets, brokerage commissions on a sale of assets

estimated at 3%, transfer taxes on a sale of assets estimated at 3% and accruing interest on secured

claims in an unliquidated amount to the extent of remaining equity, if any.  In addition, in a

liquidation, the estate will not have the benefit of a 20.8 reduction in the Mezz Lender Claim, nor

the benefit of the increase in estate assets upon the acquisition of the AYHL interests.

**STATUTORY FEES**

70.    66. The Debtors shall pay from Cash in the Estate all fees payable due as of

the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the

Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C.

§ 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan

60538680;1

payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## **MEANS FOR IMPLEMENTATION**

71.    67. The Debtors shall satisfy the Class 1 Claims with respect to each Debtor from the proceeds of the SKW and SME financing pursuant to the term sheets annexed to the Plan as exhibit B.  Class 3 Claims with respect to each Debtor will be paid on the 20 month anniversary of the Effective Date from cash on hand.  Administrative Claims, Priority Claims, if any, and statutory fees to the Office of the United States due on the Effective Date shall be paid either from funds to be contributed by the Interest Holders or the proceeds of refinancing if available.

72.    The AYHL Settlement is restated and incorporated herein by reference. The AYHL Settlement Order mandates certain relief that supports confirmation of this Plan, and also mandates certain relief in the event that confirmation of this Plan is denied or, if confirmed, the Plan fails to become effective.  The AYHL Settlement is included as a mandatory provision of this Plan and the Plan may not be deemed effective unless the terms thereof, including the following provisions, are met:[2]

> a.   GL II shall cause GL to pay, and GL shall pay, four million seven hundred thousand dollars ($4,700,000.00) to AYHL (the "Payment"). The Payment shall be made by wire transfer to AYHL on and as a disbursement to be made among the Effective Date transactions, with TIME BEING OF THE ESSENCE.

---

[2] Capitalized, undefined, terms are as set forth, if not in this paragraph, in the AYHL Settlement Agreement.

60538680;1

b.  Upon receipt of the Payment, AYHL (including, but not limited to any of, its wholly owned subsidiaries) shall not have any interest in GL, GL II or the Property and shall be entitled to no further consideration for its former membership interests in GL II, which shall be deemed surrendered or cancelled.

c.  The Payment shall be made on the Effective Date. So long as the Payment has not occurred, Additional P&I (as defined below) shall begin to accrue from the earliest of (a) the date of the Bankruptcy Court order denying confirmation (the "Confirmation Denial Date"), and (b) December 31, 2021. "Additional P&I" shall mean interest to accrue on the Payment at 12% per annum and the principal amount thereof shall increase by $10,000 per month. The maximum amount of Additional P&I shall be capped at $1,300,000.

d.  So long as AYHL has not yet received the Payment, six (6) months after the earliest of (a) the Confirmation Denial Date, (b) the date of entry of an order confirming the Plan (the "Confirmation Order"), and (c) October 31, 2021 (the earliest, the "Trigger Date"):

i.  AYHL shall be entitled to the release from escrow of, pursuant to a mutually agreeable escrow agreement (the "Escrow Agreement"), and to record with the Kings County Clerk a junior mortgage (and, inter alia, note) acceptable in form and substance to AYHL upon the Property (the "AYHL Mortgage") (both of which shall be prepared prior to the confirmation hearing date), and

ii.  The Parties, working jointly and in good faith, shall market the Property for sale through a third-party broker in an arms-length transaction which will achieve the highest fair market value, provided, however, that such sale process shall be consummated within six (6) months from the start of the marketing process; notwithstanding the foregoing, AYHL may exercise any and all rights under the AYHL Mortgage.

e.  The AYHL Mortgage shall secure the Payment and shall be subordinate to existing liens with respect to payment priority. [3]The other Parties to the Settlement Agreement covenant to AYHL to ensure that the Property will not voluntarily be encumbered with liens other than those in existence as of the

---

[3] In the event of dismissal of these cases the AYHL Settlement Order shall remain in effect.

60538680;1

date hereof, or as contemplated and effectuated as of the Effective Date. No encumbrance shall be made on the Property from the date of the Settlement Agreement without the Payment having been made, it being understood that the Effective Date transactions include simultaneous new funding and disbursement to AYHL as provided herein, and disbursements to creditors as identified in the Plan.

f.    The AYHL Mortgage and the transactions in favor of AYHL described in the Settlement Agreement and directed herein (including the sale of the Property pursuant to paragraph subparagraph (b) above, if it occurs) shall qualify for the exemption protections of Section 1146 of the Bankruptcy Code, as set forth below.

73.    Plan projections are annexed to the Disclosure Statement as Exhibit B.

Based on the equity in the Property at this time, the Debtors believe that when the SKW and SME loans mature, the obligation may be refinanced on the same or better terms as under the Plan.

74.    68. Confirmation of the Plan is contingent upon the following conditions being satisfied:

(i)    Expungement of, or estimation that the Goldman and AYM Claims will be expunged.

(ii)  215 Moore Street Mezzanine Lender withdrawing its $17,848,567 claim26,337,212.43 Claim against Monsey, or expungement of, or estimation that such Claim will be expunged.

(iii)  Binding commitment of financial institutions or other bona fide capital providers of amounts necessary to fund Plan payments and refinancing of secured debt of Grand Living II and Grand Living.

(iv)  the Confirmation Order being in form and substance acceptable to the Debtors, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

The Debtors may waive any or all of the confirmation conditions.

60538680;1

75.    69. The effectiveness of the Plan is contingent upon the following conditions being satisfied:

(iii)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors; and

(ii)    No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this paragraph are satisfied, or, if permitted, waived.

(iii)   The Debtors may waive any or all of the confirmation conditions.

(iii)   Implementation of the AYHL Settlement, as set forth above.

76.    70. **Vesting** – Except as otherwise provided in the Plan, including with respect to the AYHL Settlement, on the Effective Date all assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

77.    71. **Execution of Documents** – The Debtor shall be authorized to execute, in the name of any necessary party, (except with respect to the AYHL Settlement,) any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

24

60538680;1

78. ~~72.~~ **Recording Documents** – Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

79. ~~73.~~ **Preservation of Claims** – All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized Debtors' estate, provided, however, that

(i) the Reorganized Debtors shall have sole authority for prosecuting any such claims, and

(ii) This provision shall not supersede the terms of the AYHL Settlement.

80. ~~74.~~ **Stamp Tax** – Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

60538680;1

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

81.    75. **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

## MANAGEMENT OF THE DEBTORS

82.    76. Each Debtor is managed by David Goldwasser.  Post-confirmation management shall be performed by Michael Lichtenstein and Toby Moskovits.

83.    77. Neither the Debtors nor any of their employees, advisors, attorneys, accountants, financial consultants, contractors, agents, and their successors and assigns, shall have or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or omission in connection with, related to, or arising out of, the pursuit of confirmation consummation, or other administration of the Plan or the property to be distributed or otherwise dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the

26

60538680;1

Debtors and each of their employees, advisors, attorneys, accountants, financial consultants, contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative thereof, shall have or pursue any claim or cause of action against the Debtors for making payments in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid in full, other than as a result of gross negligence or willful misconduct.

60538680;1

## LIQUIDATION ANALYSIS

84. ~~78.~~ In a liquidation under Chapter 7 of the Bankruptcy Code, each Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The Debtors believe that the Plan provides at least an equivalent return for each Debtor's estate as could be achieved in a liquidation.  As set forth on Exhibit B hereto, each Debtor projects that in a Chapter 7 liquidation, the return to such Debtor's estate would be reduced by an additional layer of administration legal expenses and commissions, which the Debtors estimate would total at least 15% of the sale proceeds.  The Debtors estimate an additional 3% transfer tax on the sale of the Properties, 3% trustee commission on the sale, and Chapter 7 brokerage and legal professional fees equal to about 9% of the value of estate assets.

## LITIGATION ANALYSIS

85. ~~79.~~ The Debtors are aware of no litigation with third parties, except ~~as follows:~~

~~(iii)    the~~ Mezz Lender's action to foreclose on the Membership Interests,  which will be made moot by the Plan~~.~~

~~(ii)  the 2016, 2017, 2020 and 2021 Actions which will be made moot by the Plan.~~

~~(iii)  The Adversary Proceeding which, as set forth herein, must be resolved by determining that the merger consideration in to All Year.~~

28

(iv)  The objection to the Goldman Claims must result in the expungement or an estimation that the Claims will be expunged. **PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS**

86.  80. The Debtors shall be disbursing agent under the Plan without a bond. The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

60538680;1

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

87.    81. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## TAX CONSEQUENCES

88.    82. The Debtors do not believe that there will be any negative tax consequences to the Debtors or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

89.    83. THE DEBTORS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

60538680;1

**PLAN ALTERNATIVES**

90.    84. Generally, plan options in these circumstances include selling, refinancing, recapitalizing or loan modification.  In this case, the Debtors believe that loan modification or refinancing is the best alternative for maximizing value and facilitating payment to Creditors.

**VOTING PROCEDURES AND REQUIREMENTS**

91.    85. A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each impaired creditor is entitled to execute the ballot and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 20212022, at the following address:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, Floor 11, New York, New York 10022, Attn:  Mark A. Frankel, Esq.

92.    86. Each Creditor of the Debtors whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtors, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court.

93.    87.  Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

60538680;1

94.   88. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

95.   89. The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

96.   90. The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## **CRAMDOWN**

97.   91. If any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

98.   92. The Debtors intend to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

99.   93. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or Interests.  "Fair and equitable" has different meanings for Secured and Unsecured Claims.

100.   94. With respect to a Secured Claim, "fair and equitable" means either: (a) the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives

32

deferred cash payments at least equal to the allowed amount of its Claim with a present value as of
the Effective Date at least equal to the value of such Creditor's interest in the property securing its
Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of
that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor
realizes the "indubitable equivalent" of its Claim under the Plan.

101.    95. With respect to an Unsecured Claim, "fair and equitable" means either:
(a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of
its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the
dissenting class will not receive any property under the Plan.

102.    96. In the event one or more classes of impaired Claims rejects the Plan, the
Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and
equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

60538680;1

**CONFIRMATION OF THE PLAN**

103.    97. Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

104.    98. By order of the Bankruptcy Court dated _____, 20212022, the Confirmation Hearing has been scheduled for _____, 20212022, at ____.m., in the Honorable Robert D. Drain's Courtroom, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____ 20212022 at 5:00 p.m.:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York  10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

105.    99. At the Confirmation Hearing, the Bankruptcy Court will determine with respect to each Debtor whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  For each Debtor, the applicable requirements are as follows:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has

34

been proposed in good faith and not by any means forbidden by law, (d) any payment made or

promised or by a person issuing securities or acquiring property under the Plan, for services or for

costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan

and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such

payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed

after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as

reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed to

serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an

affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under

the Plan, and the appointment to, or continuance in, such office of such individual, is consistent

with the interests of Creditors and equity security holders and with public policy, and the Debtor

has disclosed the identity of any insider that will be employed or retained by the Reorganized

Debtor, and the nature of any compensation for such insider, (f) with respect to each class of

impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or

will receive or retain under the Plan on account of such Claim or interest property of a value, as of

the Effective Date of the Plan, an amount that is not less than the amount that such holder would so

receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy

Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the

Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different

treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will

be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan,

determined without including any acceptance of the Plan by any insider holding a Claim of such

35

class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

106.    100. The Debtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that each Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

36

60538680;1

**CONCLUSION**

The Debtors urge the Debtors' Creditors to vote to accept the Plan.

Dated: New York, New York
~~August 27, 2021~~
January 5, 2022

**MY 2011 GRAND LLC and**
**S&B MONSEY LLC**

By:      s/ David Goldwasser


**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtors**


By:      s/Mark Frankel
           800 Third Avenue
           New York, New York 10022
           (212) 593-1100

60538680;1

Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York  10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                                Chapter 11

      MY 2011 GRAND LLC, *et al*,[1]                      Case No.  19-23957 (RDD) (RG)

                                Jointly Administered

                          Debtors.
--------------------------------------------------------x

## **SECOND AMENDED JOINT PLAN OF REORGANIZATION**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: MY 2011 Grand LLC (0415) and S&B Monsey LLC (7070)
60538680;1

## INTRODUCTION

MY 2011 GRAND LLC and S&B MONSEY LLC, (each a "Debtor", and collectively, the "Debtors") submit this joint plan of reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH DEBTOR AND EACH DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

1.      As used in this Plan, the following terms will have the meanings hereinafter set forth:

2.      "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against a Debtor's Estate under Chapter 123, Title 28, United States Code.

3.      "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

4.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

5.      "Allowed Amount" shall mean the amount of an "Allowed Claim."

6.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an

2

60538680;1

objection or (ii) which is allowed by a Final Order; or (b) which is listed on a Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

7.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

8.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

9.      "AYHL" shall mean All Year Holdings Limited.

10.      "AYHL Settlement" shall mean that certain agreement approved by the Bankruptcy Court by order dated October 25, 2021 (docket no. 136).

11.      "AYM" shall mean All Year Management.

12.      "Assets" shall mean any and all of the respective real or personal property of any nature of the Debtors, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of the Debtors, of any nature whatsoever, including, without limitation, the property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code.

13.      "Avoidance Actions" shall mean all claims and causes of action which a Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

3

60538680;1

14.     "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

15.     "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

16.     "Bankruptcy Court" shall mean the Court as defined below.

17.     "Bar Date" shall mean August 24, 2020.

18.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

19.     "Causes of Action" shall mean any and all claims and causes of action of, and remedies granted to, a Debtor against any third party, including, without limitation, any Avoidance Actions or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code and any claims pursuant to any other statutory or common law.

20.     "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

21.     "Claimant" shall mean the holder of a Claim.

22.     "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

23.     "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

4

24.    "Confirmation Order" shall mean the order of the Court confirming the

Plan.

25.    "Court" shall mean the United States Bankruptcy Court for the

SOUTHERN District of New York.

26.    "Creditor" shall mean any entity that holds a Claim against a Debtor.

27.    "Creditors Committee" shall mean a committee of creditors appointed by

the United States Trustee in these cases under section 1102 of the Bankruptcy Code.

28.    "Debtors" shall mean MY 2011 GRAND LLC and S&B MONSEY LLC.

29.    "Disputed Claim" shall mean the whole or any portion of any Claim against

a Debtor to which an objection is timely filed or may be timely filed as to which a Final Order has

not been entered allowing or disallowing such Claim or any portion thereof.

30.    "Disputed Claim Reserve" shall mean Cash to be set aside by the

Disbursing Agent on the Effective Date in an escrow account maintained by the Disbursing Agent,

in an amount equal to the amount that would have been distributed to the holders of Disputed

Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other

amount as may be approved by the Bankruptcy Court.

31.    "Effective Date" shall mean the date fifteen (15) days after the

Confirmation Order is a Final Order, or such other date as may be practicable, provided that absent

Bankruptcy Court approval, such date shall be no later than sixty days after the Confirmation

Order is a Final Order.

60538680;1

32.    "Estate" shall mean the estate of each Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

33.    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

34.    "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

35.    "Impaired" shall mean not Unimpaired.

36.    "Interest" shall mean an existing ownership interest in a Debtor.

37.    "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

38.    "Goldman" shall mean Yoel Goldman.

39.    "Goldman Claims" shall mean the Proofs of Claim filed by Yoel Goldman and All Year Management on August 21, 2020 against each of the Debtors. The Goldman Claims seek the sum of $10,000,000 in compensatory and punitive damages arising in connection with a series of actions taken by the Debtors, in concert with others, allegedly constituting breaches of contract, breaches of fiduciary duties, and breaches of implied covenants of good faith and fair dealing, which have since been expunged.

40.    "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

6

41.     "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

42.     "Membership Interests" shall mean the Debtors' membership interests in Grand Living LLC II.

43.     "Mezz Lender" shall mean 227 Grand Mezz Lender LLC.

44.     "Mezz Loan" shall mean that certain joint and several loans made to Debtors by the Mezz Lender secured by their respective Membership Interests.

45.     "Monsey" shall mean S&B Monsey LLC.

46.     "MY 2011" shall mean MY 2011 Grand LLC.

47.     "Petition Date" shall mean November 6, 2019.

48.     "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

49.     "Property" shall mean the real property at 227 Grand Street, Brooklyn, New York 11211 owned by Grand Living LLC.

50.     "Property Mortgage' shall mean the $16,350,000 mortgage on the Property.

51.     "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

60538680;1

52.    "Priority Claims" shall mean Claims under Sections 507(a)(3),(4),(5),(6), (7) and (8) of the Bankruptcy Code.

53.     "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

54.    "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (60) days after the Effective Date.

55.    "Reorganized Debtors" shall mean the Debtors on and after the Effective Date.

56.    "Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

57.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

58.    "Unclassified Priority Claims" shall mean tax Claims under Sections 507(a)(8) of the Bankruptcy Code.

59.    "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

60.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against a Debtor or a Debtor's Estate; or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting

8

60538680;1

from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative of priority claims.

61.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## **CLAIMS CLASSIFICATION, TREATMENT AND VOTING**

62.    On the Effective Date, the Debtors' cases will be deemed substantively consolidated in accordance with the terms of the Plan. As a result, the classes of Claims and Interest are classes that pertain to each of the Debtors.

## **MY 2011 Class 1**

63.    **Classification** – 227 Grand Mezz Lender LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  As of ~~July 15~~December 23, 2021, ~~the~~ 227 Grand Mezz Lender LLC asserts that $~~13,632,948.93~~14,509,388.93 is due from MY 2011 and Monsey, jointly and severally.  This amount includes substantial default rate interest at 24% per annum, together with late fees and large legal fees, all of which will be the subject of an objection.  Pursuant to the agreement with the estate of Abraham Schwarzman a copy of which is annexed to the Plan as Exhibit A, 20.8% of the Claim has been waived for Plan purposes.

64.    **Treatment**  On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 1 Claim plus interest through the date of payment, subject to the Debtors' agreement with the estate of Abraham Schwarzman to waive payment of 20.8% of the Class 1 Claim.

60538680;1

65.    **Voting** – The Debtors assert that Class 1 is Unimpaired and deemed to have accepted the Plan.  The Class 1 Claimant asserts that it is Impaired and entitled to vote to accept or reject the Plan.  Subject to a reservation of the Debtors' rights to assert at that the Confirmation Hearing that the Class I claimant is Unimpaired, the Class 1 Claim is provisionally Allowed in the amount of $1.00 for voting purposes and the Class 1 Claimant is entitled to vote to accept or reject the Plan.

### MY 2011 Class 2

66.    **Classification** –  Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  The Debtors estimate no Class 2 Claims.

67.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

68.    **Voting** – Unimpaired and deemed to have accepted the Plan.

### MY 2011 Class 3

69.    **Classification** – General Unsecured Claims.   Filed and scheduled Claims totalAllowed General unsecured claims total $20,038,000.00, including the $20 million Goldman Claims.  The Debtors estimate that the Goldman Claims will be disallowed and that the Allowed Amount of the Class 3 Claims will beUnsecured Claims are projected to total $38,000.

70.    **Treatment** – Each Class 3 Claimant shall be paid the Allowed Amount of its Claim plus interest at the Legal Rate on the 20-month anniversary of the Effective Date.

10

60538680;1

71.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**MY 2011 Class 4**

72.    **Classification** – Interests Holders.

73.    **Treatment** – To the extent necessary, Interest Holders shall be obligated to pay or escrow for Administrative Claims and statutory fees due to the Office of the United States Trustee on or before the Effective Date.  Interest Holders shall be entitled maintain ownership of their Interests under the Plan.

74.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Monsey Class 1**

75.    **Classification** – 227 Grand Mezz Lender LLC holds the Mezz Loan, consisting of a note and security interest in the Membership Interests.  As of July 15December 23, 2021, the 227 Grand Mezz Lender LLC asserts that $13,632,948.9314,509,388.93 is due from MY 2011 and Monsey, jointly and severally.  This amount includes substantial default rate interest at 24% per annum, together with late fees and large legal fees, all of which will be the subject of an objection.  Pursuant to the agreement with the estate of Abraham Schwarzman a copy of which is annexed to the Plan as Exhibit A, 20.8% of the Claim has been waived for Plan purposes.

76.    **Treatment** On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 1 Claim plus interest through the date of payment, subject to the Debtors' agreement with the estate of Abraham Schwarzman to waive payment of 20.8% of the Class 1 Claim.

11

60538680;1

77.    **Voting** – The Debtors assert that Class 1 is Unimpaired and deemed to have accepted the Plan.  The Class 1 Claimant asserts that it is Impaired and entitled to vote to accept or reject the Plan.  Subject to a reservation of the Debtors' rights to assert at that the Confirmation Hearing that the Class I claimant is Unimpaired, the Class 1 Claim is provisionally Allowed in the amount of $1.00 for voting purposes and the Class 1 Claimant is entitled to vote to accept or reject the Plan.

76.    **Treatment** On the Effective Date, the Debtors shall pay the Allowed Amount of the Class 1 Claim plus interest through the date of payment, subject to the Debtors' agreement with the estate of Abraham Schwarzman to waive payment of 20.8% of the Class 1 Claim.

77.    **Voting** Unimpaired and deemed to have accepted the Plan

**Monsey Class 2**

78.    **Classification** – 215 Moore Street Mezzanine Lender LLC asserts a note claim and subordinate security interest in the ~~Monsey~~Moore Membership Interests previously owned by Monsey.  As of ~~November 6~~December 23, ~~2019~~2021, the Claimant asserts that $~~17,848,577~~26,337,212.43 is due from Monsey.

79.    **Treatment** -- On the Effective Date, the Debtors shall pay the Allowed Amount of the Class ~~1~~2 Claim plus interest through the date of payment.  The Debtors dispute the Claim and if the Claim is Allowed, the Plan may not be feasible.

80.    **Voting** – Unimpaired and deemed to have accepted the Plan

12

### Monsey Class 3

81.     **Classification** –  Priority Claims under Sections

507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code..  The Debtors estimate no Class 2

Claims.

82.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective

Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the

date of payment.

83.     **Voting** – ~~–~~ Unimpaired and deemed to have accepted the Plan.

### Monsey Class 4

84.     **Classification** – General Unsecured Claims ~~.  Filed and scheduled Claims total General unsecured claims total $20,172,705 in Monsey, including the $20 million Goldman Claims.  $17,848,567 of this amount represents a claim filed by 215 Moore Street Mezzanine Lender, which claim, the Debtors believe, will be withdrawn, expunged or estimated at no amount being due before the Confirmation hearing.  The Debtors estimate that the Goldman Claims will be disallowed and that the~~ Allowed ~~Amount of the Class 3~~ General Unsecured Claims ~~will be~~ are projected to total $172,675.

85.     **Treatment** – Each Class 3 Claimant shall be paid the Allowed Amount of

its Claim plus interest at the Legal Rate on the 20-month anniversary of the Effective Date.

86.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Monsey Class 5

87.     **Classification** – Interests Holders.

13

60538680;1

88.    **Treatment** – To the extent necessary, Interest Holders shall be obligated to pay or escrow for Administrative Claims and statutory fees due to the Office of the United States Trustee on or before the Effective Date.  Interest Holders shall be entitled maintain ownership of their Interests under the Plan.

89. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

14

## UNCLASSIFIED PRIORITY TAX CLAIMS

89. ~~90.~~ Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. Filed and Scheduled Claims total approximately 0. The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

90. ~~91.~~ Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

91. ~~92.~~ Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Professional Fee Claims) must be filed and served no later than 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Professional Fee Claims

15

and Administrative Claims incurred in the ordinary course of the Debtors' business) must be filed

and served on counsel for the Debtors and the party requesting payment of an Administrative

Claim within thirty (30) days of the date such request for payment has been filed.

92. 93. Unless otherwise ordered by the Bankruptcy Court, and subject to

notice and a hearing under section 330 of the Bankruptcy Code, requests for payment of

Professional Fee Claims incurred through the Confirmation Date must be filed and served no later

than sixty (60) days after the Effective Date (the "Professional Fee Claims Bar Date"). The

Debtors estimate legal fees of approximately $200,000250,000 through the Confirmation Date,

inclusive of any interim fees that may be awarded before that date.

## STATUTORY FEES

93. 94. The Debtors shall pay from Cash in the Estate all fees payable due as of

the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the

Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C.

§ 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan

payments and disbursements in and outside of the ordinary course of business, until the earliest of

the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or

conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## MEANS FOR IMPLEMENTATION

94. 95. The Debtors shall satisfy the Class 1 Claims with respect to each Debtor

from the proceeds of the SKW and SME financing pursuant to the term sheets annexed to the Plan

as exhibit B. Class 3 Claims with respect to each Debtor will be paid on the 20 month anniversary

16

of the Effective Date from cash on hand.  Administrative Claims, Priority Claims, if any, and statutory fees to the Office of the United States due on the Effective Date shall be paid either from funds to be contributed by the Interest Holders or the proceeds of refinancing if available.

95.    The AYHL Settlement is restated and incorporated herein by reference.

The AYHL Settlement Order mandates certain relief that supports confirmation of this Plan, and also mandates certain relief in the event that confirmation of this Plan is denied or, if confirmed, the Plan fails to become effective.  The AYHL Settlement is included as a mandatory provision of this Plan and the Plan may not be deemed effective unless the terms thereof, including the following provisions, are met:[2]

a.   GL II shall cause GL to pay, and GL shall pay, four million seven hundred thousand dollars ($4,700,000.00) to AYHL (the "Payment"). The Payment shall be made by wire transfer to AYHL on and as a disbursement to be made among the Effective Date transactions, with TIME BEING OF THE ESSENCE.

b.   Upon receipt of the Payment, AYHL (including, but not limited to any of, its wholly owned subsidiaries) shall not have any interest in GL, GL II or the Property and shall be entitled to no further consideration for its former membership interests in GL II, which shall be deemed surrendered or cancelled.

c.   The Payment shall be made on the Effective Date. So long as the Payment has not occurred, Additional P&I (as defined below) shall begin to accrue from the earliest of (a) the date of the Bankruptcy Court order denying confirmation (the "Confirmation Denial Date"), and (b) December 31, 2021. "Additional P&I" shall mean interest to accrue on the Payment at 12% per annum and the principal amount thereof shall increase by $10,000 per month. The maximum amount of Additional P&I shall be capped at $1,300,000.

---

[2] Capitalized, undefined, terms are as set forth, if not in this paragraph, in the AYHL Settlement Agreement.

17

60538680;1

d.   So long as AYHL has not yet received the Payment, six (6) months after the earliest of (a) the Confirmation Denial Date, (b) the date of entry of an order confirming the Plan (the "Confirmation Order"), and (c) October 31, 2021 (the earliest, the "Trigger Date"):

    i.   AYHL shall be entitled to the release from escrow of, pursuant to a mutually agreeable escrow agreement (the "Escrow Agreement"), and to record with the Kings County Clerk a junior mortgage (and, inter alia, note) acceptable in form and substance to AYHL upon the Property (the "AYHL Mortgage") (both of which shall be prepared prior to the confirmation hearing date), and

    ii.   The Parties, working jointly and in good faith, shall market the Property for sale through a third-party broker in an arms-length transaction which will achieve the highest fair market value, provided, however, that such sale process shall be consummated within six (6) months from the start of the marketing process; notwithstanding the foregoing, AYHL may exercise any and all rights under the AYHL Mortgage.

e.   The AYHL Mortgage shall secure the Payment and shall be subordinate to existing liens with respect to payment priority.[3] The other Parties to the Settlement Agreement covenant to AYHL to ensure that the Property will not voluntarily be encumbered with liens other than those in existence as of the date hereof, or as contemplated and effectuated as of the Effective Date. No encumbrance shall be made on the Property from the date of the Settlement Agreement without the Payment having been made, it being understood that the Effective Date transactions include simultaneous new funding and disbursement to AYHL as provided herein, and disbursements to creditors as identified in the Plan.

f.   The AYHL Mortgage and the transactions in favor of AYHL described in the Settlement Agreement and directed herein (including the sale of the Property pursuant to paragraph subparagraph (b) above, if it occurs) shall qualify for the exemption protections of Section 1146 of the Bankruptcy Code, as set forth below.

---

[3] In the event of dismissal of these cases the AYHL Settlement Order shall remain in effect.

60538680;1

96.     Plan projections are annexed to the Disclosure Statement as Exhibit B. Based on the equity in the Property at this time, the Debtors believe that when the SKW and SME loans mature, the obligation may be refinanced on the same or better terms as under the Plan.

97.     96. Confirmation of the Plan is contingent upon the following conditions being satisfied:

(i)  Expungement of, or estimation that the Goldman and AYM Claims will be expunged.

(ii)  215 Moore Street Mezzanine Lender withdrawing its $17,848,567 claim 26,337,212.43 Claim against Monsey, or expungement of, or estimation that such Claim will be expunged.

(iii)  Binding commitment of financial institutions or other bona fide capital providers of amounts necessary to fund Plan payments and refinancing of secured debt of Grand Living II and Grand Living.

(iv)  the Confirmation Order being in form and substance acceptable to the Debtors, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

The Debtors may waive any or all of the confirmation conditions.

98.     97. The effectiveness of the Plan is contingent upon the following conditions being satisfied:

(iv)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors; and

(ii)    No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this paragraph are satisfied, or, if permitted, waived.

(iii)  The Debtors may waive any or all of the confirmation conditions.

(iii)   Implementation of the AYHL Settlement, as set forth above.

19

99. 98. **Vesting** – Except as otherwise provided in the Plan, including with respect to the AYHL Settlement, on the Effective Date all assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

100. 99. **Execution of Documents** – The Debtor shall be authorized to execute, in the name of any necessary party, (except with respect to the AYHL Settlement), any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

101. 100. **Recording Documents** – Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

102. 101. **Preservation of Claims** – All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all Avoidance Actions shall be preserved for the benefit of the Reorganized Debtors' estate, provided, however, that

20

60538680;1

(iii)    the Reorganized Debtors shall have sole authority for prosecuting any such

claims, and

(iv)    This provision shall not supersede the terms of the AYHL Settlement.

103.    102. **Stamp Tax** – Under the Plan, pursuant to Bankruptcy Code § 1146(c),

(a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation

of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment

of any lease or sublease or the making or delivery of any deed or other instrument of transfer

under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation,

any deeds, bills of sale or assignments executed in connection with the purchase of the Property by

the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or

sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment.

104.    103. **Release of Liens** – Except as otherwise provided for in the Plan, (a)

each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor

any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or

such Lien shall automatically, and without further action by the Debtor be deemed released, and

21

(y) execute such documents and instruments as the Debtor requests to evidence such Claim

holder's release of such property or Lien.

## MANAGEMENT OF THE DEBTORS

105.    ~~104.~~ Each Debtor is currently managed by David Goldwasser.

Post-confirmation management shall be performed by Michael Lichtenstein and Toby Moskovits.

106.    ~~105.~~ Neither the Debtors nor any of their employees, advisors, attorneys,

accountants, financial consultants, contractors, agents, and their successors and assigns, shall have

or incur any liability to any holder of a Claim or Interest, or to any other entity, for any act or

omission in connection with, related to, or arising out of, the pursuit of confirmation

consummation, or other administration of the Plan or the property to be distributed or otherwise

dealt with under the Plan, except for gross negligence or willful misconduct, and in all respects the

Debtors and each of their employees, advisors, attorneys, accountants, financial consultants,

contractors, and agents shall be entitled to rely upon the advice of counsel with respect to its duties

and responsibilities under the Plan. No current Holder of a Claim or Equity Interest, representative

thereof, shall have or pursue any claim or cause of action against the Debtors for making payments

in accordance with the Plan, or for implementing the provisions of the Plan. The Debtors shall not

be liable for obligations relating to Allowed Claims to the extent that Allowed Claims are not paid

in full, other than as a result of gross negligence or willful misconduct.

## DISTRIBUTIONS TO CREDITORS

107.    ~~106.~~ The Debtors shall be disbursing agent under the Plan without a bond.

The Debtor reserves the right to file objections to claims in the event grounds exist to object to

22

60538680;1

particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

60538680;1

## EXECUTORY CONTRACTS

108.    ~~107.~~ All unexpired leases and executory contracts not rejected prior to the

Effective Date shall be assumed under the Plan.  In the event of a rejection which results in

damages a proof of claim for such damages must be filed by the damaged party with the Court

within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of

any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim

arising from the rejection of any Executory Contract or unexpired lease not filed with the Court

within the time period provided herein shall be deemed discharged and shall not be entitled to

participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

109.    ~~108.~~ Retention of Jurisdiction.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to each Debtor's Bankruptcy Case including, but not

limited to, proceedings:

- To consider any modification of the Plan under Section 1127 of the
  Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against
  the Debtors to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and Causes of Action which may
  exist on behalf of the Debtors or a Debtor's Estate, including, but not
  limited to, any right of a Debtor or a Debtor's Estate to recover assets
  pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement
  of expenses which may be made;

24

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enforce all orders entered in this case including without limitation the order approving the AYHL Settlement,

- To enforce the AYHL Settlement,

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtors.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

110.    109. **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

111.    110. **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

112.    111. **Other Actions**.  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

25

60538680;1

113.   ~~112.~~**Modification of Plan**.  The Debtors may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

114.   ~~113.~~**Injunction**.  ~~The~~Except as may be consistent with the AYHL Settlement, the confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtors or their property or properties, any obligation or debt except pursuant to the terms of the Plan.

115.   ~~114.~~**Discharge.**  On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Plan shall:  (i) discharge each Debtor and any of its Assets from all Claims, demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all entities from asserting against each Debtor or any of its Assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141

26

60538680;1

of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against each Debtor at any time, to the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from any Claims and agreements related to debts that arose on or before the Effective Date and such debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

## **CLOSING THE CASE**

116.    115. Upon substantial consummation, the Debtors may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
          August 27, 2021
          January 5, 2022

                        **MY 2011 GRAND LLC and**
                        **S&B MONSEY LLC**

                        By:     s/ David Goldwasser

                        **BACKENROTH FRANKEL & KRINSKY, LLP**
                        Attorneys for Debtors

                        By:     s/Mark A. Frankel
                              800 Third Avenue
                              New York, New York 10022
                              (212) 593-1100

60538680;1

## EXHIBIT B TO DISCLOSURE STATEMENT

## PLAN ~~DISTRIBUTION~~ ANALYSIS BASED ON FILED CLAIMS

| Assets | |
|---|---|
| Membership Interests | $15,329,562, before acquisition of AYHL interests, $23,675,000 after acquisition |
| ~~Properties~~ | ~~$16,187,500~~ |

| Liabilities | |
|---|---|
| Administrative Expense Claims | ~~$200,000~~$250,000 |
| Unclassified Priority Claims | 0 |
| AYHL Settlement | $4,700,000 |
| Class 1 New York City Liens. | $0.00 |
| Class 2 227 Grand Mezz Lender LLC | ~~$13,632,948, subject to reduction by 20.8% to the extent necessary to ensure Plan feasibility~~$11,578,492.30 ($14,509,388.93 less 20.8%) |
| Class 3 Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $0 |
| Class 4 General Unsecured Claims | $210,675~~,~~ not including ~~the Goldman Claims or~~ the 215 Moore Street Mezzanine Lender claims |
| Interest Holder Equity | ~~$2,143,877~~$6,935,833, after acquisition of AYHL interests |
| **Total** | ~~$16,187,500~~$15,329,562 |

## CHAPTER 7 LIQUIDATION ANALYSIS BASED ON FILED CLAIMS

| Assets | |
|---|---|
| Properties | ~~$16,187,500~~$15,329,562 |

| Liabilities | |
|---|---|
| Administrative Expense Claims | ~~$1,618,750~~$1,686,264 |
| Unclassified Priority Claims | 0 |
| Class 1 New York City Liens. | $0.00 |
| Class 2 227 Grand Mezz Lender LLC | ~~$13,632,948~~$13,643,411 |
| Class 3 Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $0 |
| Class 4 General Unsecured Claims | ~~$210,675, not including the Goldman Claims or~~ |

60538680;1

| | the 215 Moore Street Mezzanine Lender Claims -0- |
|---|---|
| Interest Holder Equity | 725,127 -0- |
| **Total** | $16,187,500 $15,329,562 |

Note: All Claim amounts subject to objection.

2

Document comparison by Workshare 10.0 on Wednesday, January 5, 2022
2:48:56 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\279 Grand\Amended MY 2011 Discl Stt.010.docx |
| Description | Amended MY 2011 Discl Stt.010 |
| Document 2 ID | file://F:\279 Grand\Amended MY 2011 Discl Stt.012.docx |
| Description | Amended MY 2011 Discl Stt.012 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 277 |
| Deletions | 214 |
| Moved from | 6 |
| Moved to | 6 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 503 |