UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                                              Chapter 11

MY 2011 Grand LLC, *et al*,[1]                                       Case No. 19-23957 (SHL)

                     Debtor.
---------------------------------------------------------x

## DEDLARATION IN SUPPORT OF PLAN CONFIRMATION[2]

David Goldwasser, as authorized signatory for MY 2011 Grand LLC ("MY2011") and S&B Monsey LLC ("Debtors"), as and for declaration in support of the entry of an order under sections 105(a), 363, 365 and 1127 and 1129 of title 11 of the United States Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, approving the proposed sale of the real property at 227 Grand Street, Brooklyn, New York 11210 (the "Property"), and (b) confirming the Debtors' proposed sixth plan of reorganization as modified ("Amended Plan") to provide, among other things, for the closing of such sale of the Property under the Amended Plan, respectfully states as follows:

## BACKGROUND

1.      On November 6, 2019, each of the Debtors filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

2.      My2011 owns a 31.75% membership interest in Grand Living LLC II. Monsey owns a 33% membership interest in Grand Living LLC II.  All Year Holdings Limited

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: MY 2011 Grand LLC (0415) and S&B Monsey LLC (7070)
[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Amended Plan.

("All Year"), an entity that was controlled by Yoel Goldman ("Goldman") on the Petition Date, holds the remaining 35.25% membership interest in Grand Living LLC II. Grand Living LLC II is the sole member of Grand Living LLC ("Grand Living").

3. Grand Living owns the real property at 227 Grand Street, Brooklyn, New York 11211 ("Property"), pictured below:



4. 227 Grand Street Mezz Lender LLC ("Mezz Lender") holds a joint and several claim in the amount of $16,235,922 as of September 15, 2022 against the Debtors secured by their respective membership interests (the "Membership Interests") in Grand Living LLC II ("Mezz Loan").

2

5. Based on a February 18, 2021 appraisal, the Debtors estimated that the value of the Property was $42 million. The Property mortgage is currently being asserted in the amount of approximately $19,252,191.92 ("Property Mortgage").

6. The Mezz Loans came due, but the Debtors could not agree with Mr. Goldman, who controlled All Year's 35.25% membership interest, on refinancing or on a buy-out. The Debtors nonetheless found hard money financing, but the deal needed a few days more to close. The Mezz Lender had scheduled a UCC sale of the Debtors' Membership Interests and was unwilling to adjourn the sale to enable the Debtors to obtain new financing.

7. The Debtors, therefore, filed these cases to buy time to obtain such financing. Initially in these cases, the Debtors moved to dismiss and close on the deal essentially as contemplated before the case was filed. The Debtors, however, did not proceed because the settlement fell apart before the hearing on the motion.

8. The original plan to exit bankruptcy was to refinance the Mezz Loan. For some time, the Debtors had a lender committed with a term sheet to refinance Mezz Loan. Part of the delay in effectuating that refinance was that the loan was contingent upon a corresponding refinancing or extension of the Property Mortgage which matured by its terms.

9. The Property Mortgage lender was ready to extend the loan and send extension documents that would have extended the loan and enabled an exit from bankruptcy. But due to the unreasonable refusal of Goldman to provide the information that the Property Mortgage Lender needed for the extension, the Property Mortgage loan went into default. Due to COVID-19 and lack of cooperation by Goldman who refused to provide financial information and sign an extension of his personal guaranty, potential refinancing lenders became

uncomfortable and refused to refinance the Mezz Loan or the Property Mortgage. As a result of the breakdown in financing, the Debtors advised the Court that it could not move forward with confirmation of the original plan.

10. Goldman subsequently lost control of AYHL to its creditors. The Debtors, therefore, commenced settlement negotiations with the responsible restructuring officers, which resulted in a settlement agreement approved by the Bankruptcy Court on October 20, 2021. The order approving the settlement agreement requires the Plan to incorporate the terms of the AYHL settlement and the Plan does so and makes performance under the AYHL settlement mandatory including with respect to payment of AYHL on account of its secured claim at closing.

11. Another claim that needed to be resolved to enable the Debtors to confirm a plan was asserted by 215 Moore Mezzanine Lender LLC ("Moore Mezz Lender") which filed a claim in the amount of $17,848,567.56 (the "215 Moore Claim"), seeking payment from Monsey under a mezzanine loan made jointly and severally to Monsey and Moore Development LLC on November 18, 2016 (the "Moore Mezzanine Loan"). Moore Mezz Lender asserts that $28,173,113.24 is due to Moore Mezz Lender as of June 1, 2022. The settlement of that claim resulted in a global agreement to either refinance the Property by July 15, 2022, and pay creditors under the Fifth Amended Plan, or to abort the plan and sell the Property by October 14, 2022.

**THE PROPERTY SALE**

12.    The Bankruptcy Court approved the Disclosure Statement for the Fifth Amended Plan, but subsequently marked the confirmation hearing off the calendar since the Debtors were unable to close on the proposed refinancing.

13.    Moving forward with a sale of the Property under the global settlement agreement, the Grand Living LLC retained B6 Real Estate Advisors to market the Property.

14.    The parties subsequently conferred and agreed that if feasible, the pending plan should be amended to provide for a sale of the Property. After hearings on September 13, 2022, and September 19, 2022, the Bankruptcy Court entered an order dated September 20, 2022 authorizing a Property auction on September 20, 2022 and a hearing on October 6, 2022 to (a) approve the Property sale and (b) to confirm the Plan as amended to incorporate the sale.

15.    B6 Real Estate reported to the Debtors that despite its best efforts, in (i) vetting potential buyers, (ii) conducting property tours, and (iii) and assisting in price negotiations, no offers were made that exceeded the 227 Grand Street Mezz Lender LLC's reserve price. The Property, therefore, is being sold to 227 Grand Street Mezz Lender LLC by credit bid under the sale agreement ("Sale Agreement") annexed to the Plan.

16.    The closing date on the sale of the Properties will be the Effective Date of the Plan.

**THE DEBTORS' PLAN**

17.    On October 3, 2022, the Debtors filed the Amended Plan providing for the sale of the Property. All creditors are entitled to payment in full with interest under the

5

Amended Plan, except 227 Grand Street Mezz Lender and 215 Moore Street Mezzanine Lender LLC, each of which consent to its treatment under the Amended Plan. The Debtors therefore submit that the Amended Plan contains only non-material modifications to the Fifth Amended Plan.

18. The Amended Plan has nine classes, five relating to MY 2011 and four for Monsey.

19. MY 2011 Class 1 under the Amended Plan is 227 Grand Street Mezz Lender LLC which holds the Mezz Loan, consisting of a note and security interest in the Membership Interests. As of September 15, 2022, 227 Grand Street Mezz Lender is owed $16,235,922 from MY 2011 and Monsey, jointly and severally. Class 1 is deemed satisfied by transfer to the Property to it or its designee under the Plan pursuant to the 227 Grand Street Mezz Lender LLC credit bid it made in connection with the sale of the Property by at an auction held at the offices of Akerman LLP on September 20, 2022. Such bid was the successful bid and 227 Grand Street Mezz Lender was the successful bidder at the auction.

20. MY 2011 Class 2 consists of Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. The Debtors estimate no Class 2 Claims.

21. MY 2011 Class 3 consists of General Unsecured Claims. Allowed General Unsecured Claims are projected to total $38,050 are entitled to payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable Legal Rate as it accrues from the Petition Date through the date of payment.

22. MY 2011 Class 4 consists of Interests Holders. Interest Holders shall receive no distribution under the Plan, except that they shall be entitled to maintain ownership of their Interests under the Plan

23. Monsey Class 1, like MY 2011 Class 1, consists of 227 Grand Street Mezz Lender LLC, and is entitled to same treatment as MY 2011 Class 1.

24. Monsey Class 2 is 215 Moore Street Mezzanine Lender LLC, which holds a note claim and security interest in the Moore membership interests previously owned by Monsey. The Claimant shall be paid $100,000 on account of its Monsey Class 2 Claim.

25. Monsey Class 3, like MY 2011 Class 2, consists of Priority Claims, of which the Debtors estimate there are none.

26. Monsey Class 4, consists of Monsey General Unsecured Claims, which are projected to total $172,675, and which are entitled to Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable Legal Rate as it accrues from the Petition Date through the date of payment.

27. Monsey Class 5, like MY 2011 Class 4, consists of Interests Holders. Interest Holders shall receive no distribution under the Plan, except that they shall be entitled to maintain ownership of their Interests under the Plan.

28. In addition to the classified claims, the Plan necessarily provides for payment of Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. The Debtors are aware of no such Claims. The treatment of such Claims, if any, shall be payment in Cash on

the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

29. Similarly, Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

30. The Plan has an Administrative Claims bar date (except for Professional Fee Claims) of 35 days after entry of the Confirmation Order (the "Administrative Claims Bar Date"). Applications for approval of Professional Fee Claims incurred through the Confirmation Date must be filed and served no later than thirty (30) days after the Effective Date (the "Professional Fee Claims Bar Date"). The Debtors estimate legal fees of approximately $700,000 through the Confirmation Date.

31. After payment of the mortgage and sale expenses relating to the Grand Living LLC sale of the Property, and payment of the AYHL lien in accordance with the order approving the AYHL settlement, the Debtors shall pay from the Property Sale Proceeds all fees payable due as of the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the Debtors shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course

of business, until the earliest of the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

32. Effective Date payments under the Plan will be paid by Cash contributed by the 227 Grand Mezz Lender LLC in addition to the credit bid portion of its Claim for the purchase of the Property.  At the closing of the sale, the Disbursing Agent shall (a) cause distributions to be made to the senior lender and All Year Holdings Limited from the proceeds of the sale of the Property pursuant to the contract of sale annexed to the Plan Supplement and (b) deposit in Disbursing Agent's IOLA account sufficient funds to pay all Creditor Claims provided for in the Plan and projected United States Trustee fees for at least one year, as set forth on Exhibit A hereto.

33. Counsel to 227 Grand Street Mezz Lender shall be Disbursing Agent under the Plan without a bond.  The Debtor and 227 Grand Street Mezz Lender have the right to file objections to Administrative Claims, Professional Fee Claims or any other claims in the event grounds exist to object to particular claims, for a period of 120 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Disbursing Agent shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the

balance of the undetermined claims distribution reserve shall thereafter be returned to 227 Grand Street Mezz Lender.

34. The Debtors are aware of no unexpired leases or Executory Contracts.

**Confirmation Requirements**

35. The Plan complies with the applicable provisions of the Bankruptcy Code, under section 1129(a)(1), such as compliance with the rules for classification of claims under section 1122 of the Code and the plan requirements under section 1123 of the Code.

36. The Debtors have complied with the applicable provisions of the Bankruptcy Code under section 1129(a)(2) such as compliance with the disclosure and solicitation requirements of section 1125 and 1126 of the Code.

37. The Plan has been proposed in good faith and not by any means forbidden by law under section 1129(a)(3) because the plan is consistent with the general intent of the Code to maximize the return to all creditors.

38. Any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, under section 1129(a)(4). Here, professional fees are subject to approval of the Bankruptcy Court.

39. Post-confirmation management of the Debtor will performed by Michael Lichtenstein and Toby Moscovitz, as beneficial owners. That is consistent with section 1129(a)(5) since creditors will not be affected by post-confirmation management.

40. The Plan proposes no rate change for which governmental regulatory commission approval is required, under section 1129(a)(6).

41. In a liquidation under Chapter 7 of the Bankruptcy Code, each Debtor's assets would be sold, and the sale proceeds distributed to creditors in their order of priority. The Debtors believe that the Plan provides at least an equivalent return for each Debtor's estate as could be achieved in a Chapter 7 liquidation. If the Property sale does not close by October 14, 2022, the Property Mortgagee has the right to assert retroactive 24% default interest which would wipe out the Debtors' equity in the Property, and would, under any analysis, wipe out all claims against the Debtors junior to 227 Grand Street Mezz Lender LLC.

42. Creditors are unimpaired under the Plan, and, therefore, the requirement under section 1129(a)(7) of the Bankruptcy Code is deemed satisfied, i.e., with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, in an amount that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code.

43. Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that priority and Administrative Claims will

be paid in full on the Effective Date, or as soon thereafter as the Allowed Amounts of such Claims are determined, satisfying section 1129(a)(9) of the Code.

44. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtors under the Plan under section 1129(a)(11), since the Plan provides for payment or escrow of all amounts to be paid under the Plan on the Effective Date.

45. All fees payable under section 1930 of title 28 have been paid or the plan provides for the payment of all such fees on the effective date of the plan under section 1129(a)(12).

46. The Debtors do not have retirement benefits obligations, and, therefore, section 1129(a)(13) relating to retirement benefits does not apply to this case.

47. The Debtors respectfully requests that the Court confirm the Plan.

## **CONCLUSION**

48. The Debtors respectfully requests that the Court confirm the Plan.

Dated: New York, New York
       October 3, 2022

                                                s/David Goldwassert_____
                                                David Goldwasser, authorized signatory of the Debtors

# Exhibit A

## Sources and Uses[1]

**SOURCES**

| | |
|---|---|
| Loan from Cross River Bank | $27,000,000.00 |

**USES**

| | |
|---|---|
| MRFS IV LLC | $19,252,191.92 |
| AYHL | $ 5,251,200.00 |
| Leech Tishman Robinson Brog PLLC | $      76,297.13 |
| Robinson Brog Leinwand Greene Genovese & Gluck P.C. | $    170,244.23 |
| United States Trustee Fees | $    250,000.00 |
| David Goldwasser | $    100,000.00 |
| Backenroth, Frankel & Krinsky, LLP | $    215,000.00 |
| Akerman LLP | $    500,000.00 |
| My 2011 Class 3 Unsecured Claim | $      38,050.00 |
| S&B Monsey Class 2 -215 Moore Street Mezz Lender LLC | $    100,000.00 |
| S& B Monsey Class 4 Unsecured Claim | $    172,675.00 |
| Title Fees/Additional UST Fees, if Necessary | $    100,000.00 |
| TOTAL | $26,225,658.28 |

---

[1] The fees and claims that are not paid at closing will be held in an IOLTA account with 227 Grand Street Mezz Lender LLC's counsel Leech Tishman Robinson Brog PLLC.  227 Grand Street Mezz Lender LLC reserves the right to object to the fees, claims (including administrative claims and professional fee claims) and expenses that are being escrowed.

4863-3160-7862, v. 4