**HEARING DATE AND TIME: DECEMBER 20, 2022 AT 10:00 A.M.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

**MY 2011 Grand LLC, *et al.*,** [1]

Debtors.

Chapter 11

Case No. 19-23957 (SHL)
(Jointly Administered)

**RELATED DOC. NOS. 244, 249**

**REPLY TO THE OBJECTION OF 227 GRAND STREET MEZZ LENDER, LLC
AND IN FURTHER SUPPORT OF AKERMAN LLP'S
FIRST AND FINAL FEE APPLICATION**

**TO THE HONORABLE SEAN LANE,
UNITED STATES BANKRUPTCY JUDGE:**

Akerman LLP ("**Akerman**"), as special litigation and corporate counsel to the debtors, MY 2011 Grand LLC, and S&B Money LLC (collectively, the "**Debtors**"), hereby submits its reply to the *Objection of 227 Grand Street Mezz Lender, LLC* [ECF No. 249] (the "**Objection**") and in further support of its *First and Final Fee Application as Special Litigation and Corporate Counsel for the Debtors for Final Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred* (the **"Fee Application"**)[2] [ECF No. 244], respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. 227 Grand Street Mezz Lender, LLC ("**227 Mezz Lender**") has filed its objection to Fee Application after it specifically requested that Akerman and its co-counsel, Backenroth, Frankel & Krinsky, LLP ("**BFK**") take expedited steps to modify the existing plan and disclosure

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification numbers are as follows: MY 2011 Grand LLC (0415) and S&B Monsey LLC (7070).

[2] Capitalized Terms herein shall have the definitions ascribed to them in the Akerman Application unless otherwise noted.

67818928;3

statement and to seek to sell the Property under a confirmed plan by no later than October 14, 2022. As Akerman had successfully either objected to a variety of claims or procured multiple settlements of claims (including advantageous settlements with the Mezz Lenders) that put the Debtors in a position to confirm a plan on July 14, 2022, the procedural and substantive groundwork was in place for the Debtors' cases to be confirmed for the benefit of the Mezz Lenders, including the 227 Mezz Lender. Indeed, the very stipulations with the Mezz Lenders that were a product of the claims objections that the 227 Mezz Lender now claims were "ineffective" not only put the Debtors in a position to confirm a plan had their committed financing not fallen through as a result of the market deterioration but also put the Debtors in a position to confirm what was essentially a creditor plan.

2. In addition to the unquestionable benefit to the Debtors by virtue of navigating seemingly insoluble hurdles to the consensual confirmation of a plan, including achieving meaningful financial concessions from the intransigent Mezz Lenders, the stipulations with the Mezz Lenders also established deadlines for the sale of the Property by October 14, 2022, so that the Mezz Lenders and other stakeholders could optimize their recoveries without the dilution that would have been caused by a Madison Realty affiliate being entitled to seek approximately $700,000 in deferred default rate interest.

3. As a result of Akerman's and BFK's expedited efforts on behalf of the Mezz Lenders to leverage the existing confirmable plan and disclosure statement which had been painstakingly put in place by, among other things, Akerman's multiple claims objections and attendant litigation successes and negotiated resolutions, the Court confirmed the Plan which conferred multiple benefits upon the Mezz Lenders[3], including the 227 Mezz Lender, in what was

---

[3] The Leech Tishman Robinson Brog (formerly Robinson Brog) firm represents both of the Mezz Lenders in the Debtors' cases which presented further obstacles to the Debtors' ability to confirm a plan as they often acted in concert

essentially a creditor sponsored plan. The 227 Mezz Lender purchased the Property free and clear of over $2 million in realty transfer taxes, the Mezz Lenders avoided being primed by approximately $7 million of default rate interest that would have been owed to an affiliate of Madison Realty, and the 227 Mezz lender avoided the expense and delay of dealing with a Chapter 7 Trustee and a state Court foreclosure process.

4.      Indeed, it was so important to the Mezz Lenders that the Property be sold by October 14, 2022 (which was a very tall order), that the Mezz Lenders offered Akerman up to $250,000 in fee and cost reimbursement if the Property was sold outside of a Plan prior to October 14, 2022, and up to $500,000 in fee and cost reimbursement if the Property was sold under a confirmed plan prior to October 14, 2022..

5.      Frankly, the arguments made by 227 Mezz Lender in support of a material reduction of Akerman's fees are somewhat offensive both based on the substantive deficiencies of such arguments and the equities of the situation. The 227 Mezz Lender accrued default rate interest at 24% for multiple years and the Moore Mezz Lender asserted a claim against one of the Debtors for $17 million although none of the monies it advanced went to debtor S&B Monsey but rather to a non-Debtor affiliate—and these benefits are in addition to not having to pay multi-million dollars in transfer taxes and not being primed by a $7 million dollar default rate interest claim potentially owed to the senior lender. Moreover, the savings by the 227 Mezz Lender alone by not having to pay transfer taxes is over $1 million greater than the fees sought by Akerman and BFK.

6.      In an obvious ploy to minimize the amounts that the 227 Mezz Lender committed to pay to Akerman on account of the Akerman Fee Application, the 227 Mezz Lender asserts, in a misleading fashion, that the claims objections formulated, filed and prosecuted by Akerman

---

and filed joint objections. For some reason, only the 227 Mezz lender has opted to file an objection to the Fee Application.

3

67818928;3

against the Mezz Lenders were "ineffective" and, as a result, Akerman's fees sought in connection therewith should be reduced or disallowed.. As set forth below, the claims objections were effective as they ultimately resulted in comprehensive and favorable stipulations that put the Debtors in a position to confirm a consensual plan.  As detailed below, the 227 Mezz Lender's assertion, on behalf of the Moore Mezz Lender, that the fraudulent transfer claim against the Moore Mezz Lender was time barred was and is wrong.  Further as is the general characterization that the claims objections against Mezz Lender were essentially a wasteful exercise.  In fact, the Debtors and Akerman elected, in the sound exercise of their legal and business judgment, to forbear from pushing forward with the claims objections and chose to reach beneficial consensual resolutions with the Mezz Lenders.  From a practical and a policy perspective, Akerman respectfully submits that recovery of fees should not be denied where the Debtors chose not to push forward with full blown and expensive litigation but rather opted to settle disputes in an advantageous fashion—this should be seen as a laudable goal worthy of compensation.  In any event, the entire argument that the claims objections were wasteful and ineffective, which is the central objection of the 227 Mezz Lender, should be wholly discounted based on the successful outcome of the negotiations with the Mezz Lenders.

7.  In what appear to be "throw away" arguments, the 227 Mezz Lender, without any specifics and analysis, object to fees incurred by Akerman in connection with the various plans and disclosure statement.  First, Akerman's assistance in this area was not duplicative of BFK's efforts and only involved litigation strategy and documentation of the historical litigation history.  Second, each of the plans and disclosure statements filed were part of the iterative Chapter 11 process and led to the confirmable plan ultimately reached.  Finally, the allegations of lumping and vagueness should be discounted because the entries in most instances clearly reveal the

services rendered and it should be taken into account that Akerman, in light of the agreed cap and the binary nature of the Akerman Fee Application (i.e., how much of the escrowed funds would be paid to Akerman), elected not to spend even more time editing all of its time entries over the past three years.

## REPLY TO OBJECTION

8. 227 Mezz Lender's central objection to the Akerman Fee Application is that the clams objections against the Mezz Lenders were not effective. The "effectiveness" of the claims objections cannot be evaluated in a vacuum. Although, Judge Drain dismissed certain arguments in the claims objections and expressed doubt regarding others, the ultimate consensual resolution of the claim objections demonstrates the benefit to the Debtors' estates. As noted above, rather than pushing forward with full blown litigation on the claims objections against the Mezz Lenders, Akerman and the Debtors elected to settle the objections. Both of the settlements put the Debtors in an excellent position to confirm a consensual plan. Unfortunately, due to market forces, the Debtors' exit financing fell through. Nevertheless, the pending plan and disclosure statement which was premised in part on the settlements with the Mezz Lenders served as the framework for the Plan that was ultimately confirmed.

9. 227 Mezz Lender repeatedly states that the Debtors were time barred by Section 546 of the Bankruptcy Code from seeking to object to the Moore Mezz Lender claim on fraudulent conveyance grounds. As noted above, even if this were accurate (which it is not), Akerman was very effective in settling the claims objections. As to the allegations that the compelling fraudulent conveyance claims were time barred, this is simply not accurate. Although it might appear clear that a trustee or debtor may not exercise avoidance powers after expiration of §546(a)'s limitation period, trustees and debtors have successfully employed otherwise stale avoidance powers via objections to claims under §502(d). The majority approach is that, while §546(a)'s limitation period

5

67818928;3

bars affirmative avoidance claims, it does not prevent defensive use of avoidance powers via §502(d) (just as recoupment claims may be asserted defensively after expiration of the statute of limitations). The courts following this approach generally rely on three things: (1) the specific language of §502(d) and §546(a); (2) decisions on similar sections of the prior Bankruptcy Act; and (3) policy considerations. First, as to its specific language, §502(d) provides as follows: [T]he court shall disallow any claim of any entity from which property is recoverable under section … 550 … or that is a transferee of a transfer avoidable under [the avoidance sections of the Code] … unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable…. The majority-view courts note that this language contains no limitations period of its own. *See, e.g., U.S. Lines v. United States (In re 2 McLean Indus.)*, 196 B.R. 670, 676-677 (S.D.N.Y. 1996) (stating that if Congress intended a limitations period to be applicable to §502(d), it easily could have included a reference to §502(d) in §546(a)). They also note that §502(d) does not reference §546(a), and vice versa. Thus, they conclude that nothing in the text of either section prevents trustees from using otherwise time-barred avoidance powers defensively via §502(d). Accordingly, Akerman, on behalf of the Debtors was prepared to file an adversary proceeding on fraudulent conveyance grounds but, based on the circumstances of the cases and the exigent need to reach agreements with the Mezz Lenders, opted to negotiate beneficial settlements with both Mezz Lenders. Additionally, Akerman was prepared to move forward with the defensive adversary proceeding under Bankruptcy Code Section 502(d)(1) as well.

10. 227 Grand Mezz also complains about "a few vague time entries" as seven entries noted on Exhibit F to the Objection. The vast majority of the time entries in the Akerman Application are not "vague." To the extent the Court considers them vague as an issue, it is an

issue that Akerman can and will address at the hearing.

11. Furthermore, other than to set out a few examples, 227 Grand Mezz makes no real attempt to show that Akerman's billing is excessive. Instead, they pick a few examples and argues that the fees are just too high. They have tallied up some time entries across multiple discrete tasks and months and years of time, complaining that they are too much. This simply is not good enough. "The amount requested by a fee application cannot be considered unreasonable simply because one party feels it is excessive." *In re Blackwood Assocs., LP*¸ 165 B.R. 108, 111-12 (Bankr. E.D. N.Y. 1994). The work performed by Akerman was reasonably necessary, and the time spent doing the work was also reasonable. The Court should deny the Objection for all the reasons set forth in this Reply.

12. Similarly, 227 Grand Mezz Lenders's complaint that Akerman's time might have been duplicative of time spent by BKF is inaccurate. Akerman was retained to assist the Debtors, *inter alia*, in litigating claims objections critical to confirming a plan, which Akerman, methodically and systematically, put the Debtors (against significant odds and reasonable expectations) in an extremely advantageous position to confirm a consensual plan pursuant to which they could retain their valuable interests in the Property, and those efforts were not duplicative of the efforts by BKF.

## **CONCLUSION**

13. 227 Grand Mezz cannot provide an objective basis as to why the Akerman's efforts did not result in a benefit to the Debtors' estates. Because Akerman has established that its request for final fees is timely, reasonable, and appropriate under the circumstances, and 227 Grand Mezz's infirm and non-specific objections are not enough to overcome Akerman's showing of all the requirements under Sections 330 and 331, the Court should grant the Akerman Application.

67818928;3

**WHEREFORE**, Akerman respectfully requests that the Court deny the Objection and grant the Akerman Application.

Dated: New York, New York
December 16, 2022

**AKERMAN LLP**

By: */s/Mark S. Lichtenstein*
Mark S. Lichtenstein
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel. No.: (212) 880-3800
E-mail: mark.lichtenstein@akerman.com

*Special Counsel for the Debtors*